BETHLEHEM STEEL COMPANY *v.* MUNDAY

[No. 69, October Term, 1956.]

216

*Decided February 12, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Jesse Slingluff, Jr.,* with whom was *Kenneth C. Proctor* on the brief, for appellant.

*J. Francis Pohlhaus,* with whom was *Bernard J. Russell* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal by the Bethlehem Steel Company, employer and self-insurer in a workmen's compensation case in which an award for permanent total disability benefits for the employee made by the State Industrial Accident Commission was sustained on appeal by a judgment of the Circuit Court for Baltimore County.

On appeal, the case was submitted to a jury on issues which, among others, required findings as to the causal relation between the accident and the claimant's disability and, the effect, if any, of a pre-existing disease on the claimant's disability. The jury, in answering the issues, found that the accident was the cause of the disability and the pre-existing disease did not contribute to it, thus affirming the award of the Commission.

On May 12, 1951, at about 12:45 P. M., the appellee, Ernest F. Munday, aged 50, who was an employee of the Bethlehem

Steel Company, appellant, and who was working in the capacity of a millwright, sustained an accident. He had gone to the top of a machine in order to better perform a certain task, and in descending his foot slipped and he fell, striking his chest.

There was evidence to the effect that he continued working for about forty-five minutes and then sat down. At this time, his fellow worker said he did not "seem to act like he should". * * * "He seemed like an ill man." Soon thereafter, an ambulance was summoned which took him to the appellant's dispensary. At about 3:25 P. M., appellee left for home being driven by a Mr. Vogel. Vogel testified Munday appeared pale and said he was feeling bad; that on the way home, he complained about his chest hurting him badly; that he couldn't breathe; that he appeared worried; and, when he got out of the car he wobbled.

Appellee's wife described his actions from then until sometime between 11:00 and 12:00 P. M. when his condition led her to call the family physician, who arrived about midnight. The doctor said he was pale with grayish and moist skin; that he was breathing laboriously; that his pulse was very slow and thready; that his blood pressure was around 130/80; that he had no reflexes, which indicated he was in a state of complete shock; and the doctor thought appellee had had a cerebral accident. The doctor returned the next day and diagnosed his illness as a cerebral accident and ordered him to the Maryland General Hospital where he remained for seven weeks, when he was discharged. Appellee never recovered from a paralysis of the right side of his face, his right arm and right leg. It was undisputed that his disability was a total and permanent one. The doctor further testified he had treated appellee, some three years before, for high blood pressure, and as a result of this treatment the pressure had declined. Before the Commission, the appellant and appellee presented the testimony of some eleven witnesses, of whom five were doctors. In the doctors' testimony there was considerable mention of high blood pressure and hardening of the arteries. In addition to the oral evidence, there were offered and accepted into evidence the Bethlehem Steel Company Dispensary Record, the

Maryland General Hospital record, and a Dr. Cotter's report. The case, in the court below, was tried on the record made before the Commission, with the additional fact stipulated that prior to the accident, the claimant had lost no time from work for a period of two years because of any physical disablement. By agreement of counsel, the entire record made before the Commission was offered into evidence by the employer with the statement that each side reserved the right to object to the admissibility of any testimony that had been improperly admitted.

The first error claimed by appellant is that the court below should have permitted its counsel to read to the jury the testimony, taken before the Commission, of Dr. Scherlis, one of its experts. Dr. Scherlis was a specialist in cardiology. He had not examined appellee, nor had he heard the testimony of the previous witnesses. It is elementary that a qualified physician comes within that class of witnesses whose testimony is sought for the special skill possessed in drawing inferences and conclusions from data either observed by the witness or furnished by others; but, in deducing these inferences and interpretations, the witness must always predicate them on certain premises of fact. *Quimby v. Greenhawk,* 166 Md. 335, 339, 171 A. 59, 61.

We have carefully examined the two hypothetical questions propounded to Dr. Scherlis. With regard to the first, we think that the basis upon which he rested his opinion was not made sufficiently definite. *Quimby v. Greenhawk, supra; Mangione v. Snead,* 173 Md. 33, 49, 195 A. 329; *Wigmore on Evidence,* 3rd Ed. par. 681 (d); and, as to the second question, it is impossible for us to determine what facts the doctor took into account, or was asked to take into account, in formulating his opinion. *Ibid.* par. 681 (e) (f); *Thompson v. Phosphate Works,* 178 Md. 305, 320, 13 A. 2d 328. We, therefore, hold the trial court was within the proper exercise of its discretion in excluding this testimony. *Quimby v. Greenhawk, supra; Wigmore on Evidence,* 3rd Ed. par. 681. The questions are easily distinguishable from the one permitted in *Ihrie v. Anthony,* 205 Md. 296, 309, 107 A. 2d 104.

We have examined the few remaining questions and answers

of this witness, and find no reversible error in the Court's ruling in not permitting them to be read to the jury.

In making this ruling, we have given due regard to the increased leeway in the admissibility of evidence extended to the Commission by Sec. 10 of Art. 101 of the Code (1951). We recognize the courts must adjust themselves to the additional latitude stated in the statute; but, we reaffirm this Court's ruling in *Standard Oil Co. v. Mealey*, 147 Md. 249, 254, 127 A. 850, that this adaptation must, insofar as possible, avoid the abandonment of necessary cautions and safeguards.

The only other ruling of the Court below that is attacked by the appellant is one relating to the charge given to the jury at the time of the trial. Appellant contends it was error to allow the jury to decide that Sec. 35 (7) of the Workmen's Compensation Act (the apportionment section of said Act) did not apply if a pre-existing disease were precipitated into permanent total disability, unless the pre-existing disease had disabled the claimant from working prior to the accidental injury.

The Court had in its charge included the following:

"* * * it seems to me that the employer's contention is based on the testimony that this blow * * * lighted up the pre-existing condition, and sort of burst a bubble. It was bubbling, you know, from hypertension, high blood pressure. He had an accident, and it burst into total disability, and, therefore, if it hadn't been for the pre-existing hardening of the arteries, * * * as the employer contends, for the high blood pressure or hypertension, the accident would not have lighted it into such a horrible disability as it did * * *. The employer contends that from that set of circumstances, this is a case where that section of the law (apportionment section) should be applied, and some percentage of his disability should be attributable to the pre-existing disease or infirmity, that is, the high blood pressure or the hardening of the arteries, if he had any, and not all of the disability attributed, as the Commission did, to the accident.

"That is the basis, as I see it, for the employer's contention to you that the Commission made a mistake, and it is in the form of an issue that will be presented to you for answering. * * * the basis for the Commission's finding, as it did, was the fact that even though he had high blood pressure and perhaps hardening of the arteries, it had not actually disabled him from working because it was stipulated, at least for the period of time for which the wage statement was filed, * * * it also showed that he had not lost any time, at least for the period which was approximately, * * * two years before the accident * * *; and, therefore, the basis of the Commission's finding, as I see it, was that even though it was a pre-existing condition, that is, disease or infirmity, high blood pressure or perhaps hardening of the arteries, that it was precipitated into a permanent disability; that it was not a case where this section of the law (apportionment section) should be applied because while he had a condition, it did not cause him disability from work.

"They are the two contentions which present to you a question of fact for you twelve intelligent people from the evidence to determine in your own minds, * * *."

Appellant insists that this clearly referred to the jury a matter of statutory interpretation, and, as such, was a matter of law which should have been taken care of by the Court in its charge, and not submitted to the jury for its determination. In this contention we think the appellant is correct. It is horn-book law that juries do not pass upon questions of law; their function is to determine the facts, and apply to those facts the law as it is explained to them by the court. *Beth. Shipyard v. Damasiewicz*, 187 Md. 474, 483, 50 A. 2d 799.

We are urged to rule that even if the Court permitted the jury to interpret the apportionment section as meaning they should disregard the previous disability if it failed to cause

claimant to lose time from his work, it was harmless error, as this is the correct interpretation of the law and the jury determined it properly. Somewhat similar statutes apparently have been so construed in at least three jurisdictions. *Protho v. Nette*, 173 Okla. 114, 46 P. 2d 942; *Wood-Mosaic Co. v. Shumate*, 305 Ky. 368, 204 S. W. 2d 331; *Allen v. Maxwell Co., Inc.*, 152 Fla. 340, 11 So. 2d 572. However, we are unable to discover any sufficient reason to overrule the previous decisions of this Court mentioned below.

Our Workmen's Compensation Law was first enacted in 1914. The apportionment provision, now codified as Sec. 35 (7) of Art. 101 of the Code (1951) provides that whenever "* * * any disability * * * following an accidental injury" is due partly to such injury and partly to a pre-existing "disease or infirmity", the Commission must determine the proportion of the disability "reasonably attributable to the injury" and the proportion so attributable to the prior condition and award compensation only for that proportion due solely to "the accident". This provision was first introduced into our Compensation Law in 1931 (Ch. 363, Acts of 1931) as a result of recommendations made by a Committee appointed by the then Governor. In all likelihood, they were inspired by the decisions of this Court in *Dickson Construction & Repair Co. v. Beasley*, 146 Md. 568, 126 A. 907, and *Congoleum Nairn, Inc. v. Brown*, 158 Md. 285, 148 A. 220.

Prior to the enactment of the above mentioned section and the waiver provisions, it had been held by this Court on numerous occasions that if there be a subsisting condition of illness or incapacity or physical disability which is caused, increased, accelerated or precipitated by some act or event coming by chance or happening fortuitously, and the claimant's employment is covered by the Compensation Law, he may be compensated. See *Geipe, Inc. v. Collett*, 172 Md. 165, 169, 190 A. 836. And this is still the law subject, however, to the apportionment and waiver provisions.

This Court held in *Cabell Con. Blk. Co. v. Yarborough*, 192 Md. 360, 64 A. 2d 292, that the apportionment section was applicable so as to require the determination of whether a pre-existing disease or infirmity, which prior to the accidental in-

jury was not disabling to the extent of losing time from work, had caused or contributed to the disability that followed the accident; and, in the case of *Bethlehem Steel Co. v. Ruff,* 203 Md. 387, 101 A. 2d 218, this Court held that the same section was applicable if the disability due to the pre-existing disease or infirmity combined with the injury from the accident, and resulted in a greater disability than would be true if the pre-existing condition had not existed. We reaffirm these decisions and hold that the above is still the law. Consequently, the jury should have been instructed in accordance therewith as a matter of law, and should not have been permitted to determine that the apportionment section (Art. 101, Sec. 35 (7)) was only applicable where the pre-existing disability from disease or infirmity was actually disabling to the extent of causing loss of time from work prior to the accident.

Appellant offered a request for four instructions for directed verdicts, which was denied as to all four. The jury answered the first and fourth as requested by the appellant, and we find no error in the Court's ruling on the second and third as the issues to which they refer presented proper jury questions under the evidence.

From what has been said above, the judgment must be reversed and the case remanded for a new trial.

*Judgment reversed with costs, and case remanded for a new trial.*